John P. IRVINE, on behalf of himself and all others similarly situated, Plaintiff,

v.

DESTINATION WILD DUNES MANAGEMENT, INC.; Destination Hotels & Resorts, Inc.; and Low Hospitality Group, Inc., Defendants.

No. 2:15–cv–980–RMG.

United States District Court, D. South Carolina, Florence Division.

Signed May 26, 2015.

Joseph Scott Falls, Falls Legal, Charleston, SC, for Plaintiff.

Eric R. Magnus, Jackson Lewis PC, Atlanta, GA, Andreas Neal Satterfield, Jr., Jackson Lewis PC, Greenville, SC, for Defendants.

## ORDER

RICHARD M. GERGEL, District Judge.

Plaintiff filed this proposed class action alleging that Defendants, a resort management company and its parent companies, violated the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., ("FLSA") by illegally claiming tipped credit to reduce the wages of certain employees and violated the Age Discrimination in Employment Act ("ADEA") by unfairly forcing him to resign and replacing him with a younger worker. This case is before the Court on Defendants' Partial Motion to Dismiss, seeking dismissal of the FLSA claim (Dkt. No. 11). Plaintiff filed a Response on April 17, 2015 (Dkt. No. 14) and Defendants filed a Reply on May 11, 2015 (Dkt. No. 21).

For the reasons stated below, the Court DENIES Defendants' motion to dismiss.

### I. Background

On a Motion to Dismiss, the Court assumes the truth of all facts alleged in the complaint and the existence of any fact that can be proved consistent with the complaint's allegations. *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir.2000).

Plaintiff John P. Irvine is a resident of Charleston County, South Carolina, and a former employee of Destination Wild Dunes Management, Inc., the company that owns and manages the Wild Dunes resort, a golf resort outside the city of Charleston. Destination Wild Dunes Management is owned by Defendant Destination Hotels & Resorts, Inc., which is owned by Defendant Lowe Hospitality Group. (Dkt. No. 1 ¶¶ 5–6). The resort owns and operates a number of bars and restaurants within the resort. Plaintiff was hired on May 4, 2004 to work in the Sea Island Grill, one of these restaurants. (*Id.* at ¶ 18). Defendants paid Plaintiff

and other similarly situated employees $2.13 (Dkt. No. 14 at 1) per hour, less than the federal minimum wage of $7.25 established by 29 U.S.C. § 206(a), by claiming the "tip credit" allowed under the FLSA, 29 U.S.C. § 203(m). (Dkt. No. 1 ¶ 21). According to Plaintiff, he and other servers were regularly required to perform non-tipped work "in excess of twenty percent (20%) of their time at work." (*Id.* ¶ 21). This work included some tasks related to the tipped work, as maintenance and preparatory work, and some duties unrelated to the tip-producing work. The non-tipped work that Plaintiff alleges should have made certain hours ineligible for the tip credit included polishing and organizing dishes, cleaning tables, preparing sweet tea, stocking and cleaning stock areas and coolers, cleaning the entire restaurant and patio, set-up, break-down, and cleanup for private events, and cleaning chandeliers and windows. (*Id.* ¶ 24). It also appears from the Complaint that in addition to the non-tipped work, both related and unrelated to the tipped work, performed during regular work shifts, there were also one or more hours before each shift and one or more hours after each shift during which Plaintiff and others similarly situated were required to perform additional non-tipped work. (*Id.* ¶ 7).

Plaintiff's first claim, therefore, is that Defendants illegally claimed tip credit for hours that were subject to the federal minimum wage requirement, and underpaid Plaintiff and those similarly situated. Plaintiff's second and third claims, which are filed pursuant to the ADEA and relate exclusively to Irvine himself, are not at issue upon this consideration of Defendants' partial motion to dismiss.

Defendants filed the present motion on March 31, 2015 (Dkt. No. 11). The motion argues Plaintiffs have relied upon a non-

binding and invalid "subregulation" for their argument that Wild Dunes workers may not be required to perform non-tipped duties for more than 20% of their time if their employer is also claiming the FLSA tip credit. Plaintiffs filed a response on April 17, 2015 (Dkt. No. 14) and Defendants filed a Reply on May 8, 2015 (Dkt. No. 21).

## II. Discussion

### A. Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits the dismissal of an action if the complaint fails "to state a claim upon which relief can be granted." Such a motion tests the legal sufficiency of the complaint and "does not resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses.... Our inquiry then is limited to whether the allegations constitute 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir.1992) (quotation marks and citation omitted). In a Rule 12(b)(6) motion, the Court is obligated to "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Mkts., Inc. v. J.D. Associates Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir.2000). However, while the Court must accept the facts in a light most favorable to the non-moving party, it "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.*

To survive a motion to dismiss, the complaint must slate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Although the requirement of plausibility does not impose a probability requirement at this stage, the complaint must show more than a "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). A complaint has "facial plausibility" where the pleading "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### B. The FLSA and Tipped Occupations

The FLSA allows employers to pay a lower wage to employees who perform work that is generally tipped by customers, as set forth by 29 U.S.C. § 203(m): "In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to– (1) the cash wage paid such employee which for purposes of such determination shall not be less than the cash wage required to be paid such an employee on August 20, 1996; and (2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the wage in effect under section 206(a)(1) of this title." Because the cash wage identified in paragraph (1) is $2.13, in a state such as South Carolina that has not raised the minimum wage above the federal level of $7.25, an employer can save $5.12 per hour per employee in decreased wages by classifying a worker as a "tipped employee."[1]

The FLSA further defines a "tipped employee" as "any employee engaged in an occupation in which he customarily and

---

**1.** Prior to a set of amendments made to the FLSA in 1996, section 3(m) required an employer to pay its tipped employees a cash wage equal to 50 percent of the minimum wage (then $4.25 an hour). *Updating Regulations Issued Under the Fair Labor Standards Act*, 76 Fed.Reg. 18832–01, April 5, 2011.

regularly receives more than $30 a month in tips." 29 U.S.C. § 203.[2] Department of Labor regulations dating back forty years also specify that when an employee is working full time or part time in an occupation in which he does *not* receive more than $30 a month in tips "must receive the full compensation required ... without any deduction for tips received under the provisions of section 3(m)." 29 C.F.R. § 531.56. The question in a situation like that presented by Plaintiff, where an employee is spending a significant amount of time at work performing duties that gain no tips at all, is at what point an employer must concede that the employee is no longer working in an "occupation" that can be fairly considered as tipped for purposes of the lower wage rate.

The DOL has addressed this issue in two ways. First, it promulgated 29 C.F.R. § 531.56(e), which provides that if a tipped employee is "employed in a dual job, as for example, where a maintenance man in a hotel also serves as a waiter," then "no tip credit can be taken for his hours of employment in his occupation of maintenance man." The regulation specifically distinguishes this situation from one where an employee's non-tipped duties are related to the primary occupation, and gives the example of "a waitress who spends *part* of her time cleaning and setting tables, toasting bread, making coffee and *occasionally* washing dishes or glasses." *Id.* (emphasis added). Such a waitress, pursuant to § 531.56(e), is still engaged in a single occupation.

The DOL's approach to such single occupation workers who are being assigned nontipped work is explained in its Field Operations Handbook (FOH). According

to the DOL, the FOH is an operations manual that provides Wage and Hour Division (WHD) investigators and staff with interpretations of statutory provisions, procedures for conducting investigations, and general administrative guidance. The FOH "was developed by the WHD under the general authority to administer laws that the agency is charged with enforcing. The FOH reflects policies established through changes in legislation, regulations, significant court decisions, and the decisions and opinions of the WHD Administrator. It is not used as a device for establishing interpretative policy." The FOH is now published on the DOL website, following litigation pursuant to the Freedom of Information Act (FOIA) that allowed the public access to the guide in the 1970's. *See e.g., Brennan v. Tennessee Technological University,* 76 Lab. Cas. P 33, 237 (M.D.Tenn.1975).

Section 30d00(e) of the FOH explains the portion of § 531.56(e) that distinguishes certain situations (like the waitress example cited in the text of § 531.56(e)) from a dual occupation scenario. In these single occupations where work that is related to tipped work but is not itself tipped composes a significant portion of an employee's duties, the FOH specifies that even where non-tipped duties are related to the tipped occupation, employers may not take a tip credit if the non-tipped duties constitute a "substantial amount of time (in excess of 20 percent)" of the time worked. FOH, June 30, 2000, *available at* http://www.dol.gov/whd/FOH/ (updated Aug. 13, 2013). This standard is known as the "twenty percent rule." In other words, the FOH indicates that the DOL has examined § 531.56(e)'s language, which al-

**2.** Workers were formerly defined as "tipped" when, "in the occupation in which he is engaged, the amounts he receives as tips customarily and regularly total 'more than $20 a month.'" *Wage and Hour Division, Depart-*

*ment of Labor,* 32 Fed.Reg. 13575, 13580, September 28, 1967. A 1977 amendment raised the threshold to $30 a month in tips. Act to Amend the Fair Labor Standards Act of 1938, Pub. Law 95–151, § 3(a), 91 Stat. 1245.

lows employers to assign "part" of their employees' time to untipped work, as long as these tasks are performed "occasionally," and interpreted it to mean that employers may not have employees work on those untipped tasks as a "substantial," portion of their time, or more than twenty percent. This rule appears to be utilized by DOL as general guidance in enforcing the FLSA rather than a hard and fast rule; for example, in a 1985 Opinion Letter, without citing to the twenty percent rule, it simply informed an employer that where servers would spend 30% to 40% of their shift doing prep work, no tip credit was available for such work. (Dkt. No. 14–3, FLSA854, Dec. 20, 1985 at 4).

The gravamen of Defendants' position is that because the FOH provision dealing with related, untipped work was not adopted through notice and comment rulemaking, section 30d00(e) is not entitled to deference upon court review, and it is therefore impossible to state a claim pursuant to the twenty percent rule. As an initial matter, it appears that Plaintiff has separately alleged a direct violation of the § 531.56(e) dual occupation provision, by declaring that he was required to perform tasks not related to his occupation as server. However, he has also stated a cognizable claim at the present stage of litigation based on the twenty percent rule.

■ Pursuant to *Auer v. Robbins,* 519 U.S. 452, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997), courts defer to agencies' interpretations of their own regulations unless the interpretation is plainly erroneous or inconsistent with the regulation.[3] The Court finds no error or inconsistency in the FOH provision. *See Fast v. Applebee's Int'l,*

*Inc.,* 638 F.3d 872, 881 (8th Cir.2011), *cert. denied,* —— U.S. ——, 132 S.Ct. 1094, 181 L.Ed.2d 977 (2012) (giving *Auer* deference to FOH § 30d00(e)). Although the DOL has not adopted and promulgated the 20% rule as a codified regulation, its use of the rule has not been "dizzyingly inconsisten[t]," as Defendants claim (Dkt. No. 11–1 at 7). The DOL has had a constant position that 20% is the appropriate guideline for related but non-tipped tasks since at least 1988, when the FOH was updated to include § 30d00(e). (*See* Dkt. No. 11–1 at 15). Three years before, it had already issued an opinion letter addressing a situation where a server spent 30–40% of their shift in prep work (DOL Opinion Letter, FLSA854, Dec. 20, 1985, explaining that the employer there was not eligible for the tip credit). And in 2009 it reaffirmed the rule in its published FAQ's. *See* "Fact Sheet # 15: Tipped Employees Under the Fair Labor Standards Act," *available at* http://www.dol.gov/whd/regs/compliance/whdfsl5.pdf, revised July 2013. The only instance where DOL considered ending reliance on the twenty percent rule was when (under the guidance of an interim administrator) it issued and simultaneously withdrew an opinion letter that would have "superseded" § 30d00(e). (Dkt. No. 14–4). Ultimately, this letter, which would have shifted the DOL's position that would rely on the O*NET, discussed further below, was never adopted or relied upon by the DOL.

Further, although the applicability of the twenty percent rule is a question of first impression in the Fourth Circuit, the rule has been widely accepted by other courts. *See Driver v. AppleIllinois, LLC,*

---

**3.** Defendants also argue that because the final codified version of 29 C.F.R. § 531.56(e) differed from that proposed, that the regulation itself is entitled no deference under *Chevron* or *Auer.* (Dkt. No. 11–1 at 25–26). The cases cited are inapposite and there is no authority

to support this position. *See Time Warner Cable Inc. v. FCC,* 729 F.3d 137, 169 (2d Cir.2013) (an agency's notice-and-comment rulemaking is sufficient where, as here, the final rule is a "logical outgrowth of the rule proposed").

739 F.3d 1073, 1075 (7th Cir.2014); *Fast,* 638 F.3d at 881; *Flood v. Carlson Rests., Inc.,* 2015 U.S. Dist. LEXIS 40170, 21–28 (collecting cases). Defendants' assertion that the Eleventh Circuit rejected the twenty percent rule in *Pellon v. Bus. Representation Int'l, Inc.,* 291 Fed.Appx. 310 (11th Cir.2008) is . an overstatement. There, the Eleventh Circuit affirmed the district court, which had noted that a determination of what amount of an employee's time was "infeasible" but "unnecessary under [the] facts [presented]."

In any case, aside from any deference due to the agency's use of the twenty percent rule, such a standard would be a perfectly valid interpretation of the FLSA and § 531.56(e), even if Plaintiff presented it as a completely novel theory for the Court's consideration. *See Christopher v. SmithKline,* —— U.S. ——, 132 S.Ct. 2156, 2169, 183 L.Ed.2d 153 (2012) (explaining that where an agency's position is due no deference, its interpretation of a regulation will be considered based upon the validity of its reasoning and "all those factors which give it power to persuade"). It is clear that the FLSA and its enacting regulations contemplate a distinction between a server who is performing "occasional" related duties, such as rolling silverware, and a server who is simply being used as cheap, untipped labor (for example, if he has spent the bulk of his shift preparing for a private party, one task complained of in the Complaint).

Defendants' position is that the FLSA and its implementing regulations do not "impose" upon employers the "impossible task of categorizing and recording the countless duties servers and other tipped employees perform as cither tip-generat-

ing or not." (*e.g.* Dkt. No. 21 at 1). The problem with this stance is that if an employer considers a certain employee a "tipped employee" and therefore decides to exempt an employee from the minimum wage law, it is an inescapable duty on the part of the employer to ensure that the employee is in fact engaged in a tip-producing "occupation." Whether this assurance is established through tracking the employee's time spent on certain duties, or whether it is established through the Defendants' preferred method of analyzing the duties for compliance with the O*NET list, any evaluation of an employee's status as a tipped employee requires a review of their duties before an employer is legally entitled to reduce wages to $2.13 per hour. In any case, since employers, in order to manage employees, must assign them duties and assess completion of those duties, it is not a real burden on an employer to require that they be aware of how employees are spending their time before reducing their wages by 71%.

Defendants' proposal that the Court adopt an O*NET[4] based analysis as a substitute for the twenty percent rule (Dkt. No. 11–1 at 17–19) is puzzling, as reliance on the O*NET list would not in fact reduce employers' burden to select only certain tasks for completion by "tipped employees." For example, the O*NET task list for waiters and waitresses includes twenty-four tasks. It includes cleaning duties such as sweeping and mopping, as well as garnishing dishes, filling salt and pepper shakers, describing wine to customers, and so on. It does not include preparation for private events, or stocking of coolers (two tasks listed in the Complaint as regularly performed by

---

4. The Occupational Information Network (O*NET) is an online database providing hundreds of occupational definitions. It was developed "under the sponsorship" of the DOL Employment and Training Administration to replace the Dictionary of Occupational Titles, which was phased out of printed publication. It is not a regulation and does not purport to interpret DOL regulations or assist in their application by anyone.

Plaintiff). Relying on the O*NET as the final word as to what duties are within a waiter's occupational duties, would an employee *per se* have a wage claim upon being asked to stock a cooler? Defendants have cited to no case using O*NET occupational definitions as a substitute for the twenty percent rule, and the Court sees no utility in adopting such a rule.

Defendants' argument seems to be that there is some restriction on the way that an employee's time is spent in order to qualify for the tip credit, but that the correct standard is not the 80%/20% cutoff. For example, in its memorandum in support of the Motion to Dismiss, Defendants cite with approval the withdrawn DOL opinion letter that explained that "no limitation shall be placed on the amount of these [related] duties that may be performed, whether or not they involve direct customer service, as long as they are performed contemporaneously with the duties involving direct service to customers or for a reasonable time immediately before or after performing such direct-service duties." (Dkt. No. 11–1 at 17; Dkt. No. 11–1 at 4, Jan. 16, 2009, FLSA2009–23). This letter is the only authority that references O*NET in the context of a "tipped occupation" determination. However, it only proposes using the O*NET list to determine which duties are "related" to the tipped occupation. It does not provide a means to determine when "related" duties consume too much of an employee's time for them to be considered in a tipped occupation. Limiting related duties to a "reasonable time" would still require employers to track their employees' time, and of course provides no better answer to the question of what constitutes an "occasional" related duty pursuant to 29 C.F.R. 531.56(e) than the twenty percent rule. ■ A quantitative measure of employees' time may be tremendously useful in evaluating whether employees arc in fact employed in a tipped "occupation." A person hired as a server who spends 99% of their time cleaning bathrooms and vacuuming carpets (two tasks listed on O*NET as "core" duties of a server) is not actually engaged in a tipped occupation, even if they earn $30 per month by serving food to a table or two of customers each month. Realistically, such an employee is employed in a non-tipped occupation. The Fair Labor Standards Act "was designed to extend the frontiers of social progress by insuring to all our ablebodied working men and women a fair day's pay for a fair day's work." *A.H. Phillips, Inc. v. Walling,* 324 U.S. 490, 493, 65 S.Ct. 807, 89 L.Ed. 1095 (1945) (internal quotation omitted). "Any exemption from such humanitarian and remedial legislation must therefore be narrowly construed ... [t]o extend an exemption to other than those plainly and unmistakably within its terms and spirit is to abuse the interpretative process and to frustrate the announced will of the people." *Id.* The twenty percent rule provides sufficient guidance to support a facially plausible claim pursuant to *Iqbal* that Defendants have inappropriately claimed a tip credit pursuant to FLSA.

### III. Conclusion

In sum, DOL's two approaches to addressing non-tipped work provide Plaintiff with two separate theories under which to pursue his wage claim. First, he may argue that with respect to the duties that were *unrelated* to his job as a server, Defendants should have classified his work under dual occupations pursuant to 29 C.F.R. § 531.56(e). And second, he may argue that with respect to the duties that were *related* to his job as a server, that a "substantial amount of time (in excess of 20 percent)" was spent in related but non tip generating duties, and that he was therefore owed the standard federal minimum wage for those hours.

Defendants are not precluded from arguing in further proceedings that the twenty percent rule is unreasonable, erroneous, or inappropriate for the facts of this case. However, taking the facts in a light most favorable to the Plaintiff, he has stated an FLSA claim under both the twenty percent rule and the dual occupation rule, and the Court therefore DENIES the Partial Motion to Dismiss (Dkt. No. 11).

**IT IS SO ORDERED.**